**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Michael Young, individually, and as parent and natural guardian of Gavin Young, a minor,

Plaintiff,

v.

John Conroy,

Defendant and Third-Party Plaintiff,

and

Robert Hess,

Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-354 ADM/RLE

---

Michelle D. Christensen, Esq., Murnane, Conlin, White & Brandt, P.A., appeared for and on behalf of Defendant/Third-Party Plaintiff.

Dyan J. Ebert, Esq., Quinlivan & Hughes, P.A., appeared for and on behalf of Third-Party Defendant.

---

## I. INTRODUCTION

On January 16, 2002, the Motion for Summary Judgment [Doc. No. 13] of Third-Party Defendant was argued before the undersigned United States District Judge. This lawsuit arises out of a boating accident in which Gavin Young ("Gavin"), the minor son of Plaintiff Michael Young ("Plaintiff"), was injured when he was struck by the propeller of a boat driven by Defendant and Third-Party Plaintiff John Conroy ("Conroy"). Plaintiff sued Conroy as a result of the accident. Conroy then brought a Third-Party Complaint against Robert Hess ("Hess"), alleging negligence.

FILED 1-25-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Hess now seeks summary judgment against Conroy. Plaintiff did not take a position on the merits of this Motion. For the reasons set forth below, the Summary Judgment Motion is granted.

## II. BACKGROUND

A complete recitation of the facts in this case is unnecessary. The relevant uncontested occurrences bearing upon this motion are as follows.

On July 3, 2000, fourteen year old Gavin and his eight year old cousin Matthew Fiechtner ("Matthew") were in the water of Lake Traverse approximately 400 yards from the shore. Gavin was attempting to restart his stalled jet ski, and Matthew was treading water next to him. Both boys were wearing bright colored life vests. Being unable to restart the jet ski, which was taking on water and starting to partially sink, Gavin attempted to swim back to the dock while pulling the jet ski. However, the jet ski was too heavy, and Gavin could not pull it.

Hess had been fishing on the lake, and was on his way back to shore to get a drink when he drove by the boys in his boat and stopped to see what they were doing. Gavin was happy to see Hess, whom he had known as a friend of the family, and asked if Hess had a rope and could help. Hess gave Gavin a rope, and Gavin tied it to the front of the jet ski. Hess then tried to drive toward the shore with the boys hanging onto the back of the jet ski, but Hess' boat only had a 15 horse power motor and was unable to pull the load.[1] The boys then let go, and the boat slowly started moving forward. Gavin told Hess that he was going to swim to shore, and that Hess should tow the jet ski to shore. G. Young Dep. at 28:18-22.

Despite the difficulty caused by the unwieldiness of the waterlogged jet ski, Hess towed the jet ski to the dock. Hess Dep. at 61:2-24. Hess intended to return to retrieve the boys later. Id. at

---

[1] At the time, Gavin was fourteen years old and weighed approximately 245 pounds.

73:10-17. While Hess was untying the jet ski, the boys were swimming back to shore. Gavin removed his life jacket so he could swim faster, and he was swimming with his head down. Michael held onto Gavin's leg while Gavin swam. When they had reached the half-way point, Matthew saw a boat approaching them. He alerted Gavin, who looked up and saw that the boat was only a few seconds away and heading right toward them. Gavin waved his arms, but the boat was coming "real fast," so Gavin decided to dive underwater to avoid the boat. G. Young Dep. at 33:22-34:10.

The boat was operated by Conroy. At the last second, Conroy saw Matthew on his left, and then an arm go up in the air directly in front of his boat, slightly to the right. Conroy Dep. at 33:21-35:1. Conroy then turned his boat as hard as he could to the right. When Gavin resurfaced from diving underwater, he had been struck by the propeller on Conroy's motor, and had received multiple cuts on his leg and torso. During this time, Hess and Gavin's mother watched from the dock where Hess had recently untied the jet ski. Conroy put both boys in his boat, and returned to shore. Conroy's boat had a 150 horse power outboard motor, and the trip back to shore took approximately 20 seconds. G. Young Dep. at 62:1-3. Gavin was then transported to the hospital emergency room where he underwent surgery and was released six days later.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary

judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Conroy argues that by towing the jet ski to shore, Hess assumed a duty to "assist" Gavin, encompassing a duty to protect, making him liable for damages resulting from his failure to use reasonable care. Def. Mem. in Opp. at 12-13. Conroy cites the Restatement (Second) of Torts § 323 for the proposition that one who voluntarily undertakes to perform an act he is not bound to do must use due care in the performance of the action, or be held liable for the harm that results.[2] Id. The Minnesota Supreme Court has referred to this principle as "well established," noting that it is "ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all . . . ." Isler v. Burman, 232 N.W.2d 818, 822 (Minn. 1975) (internal citation omitted) (referring to Restatement (Second) of Torts § 323).

In Minnesota, to prevail on a claim for negligence, a plaintiff must prove (1) that the defendant has a legal duty to the plaintiff to take some action, (2) that there was a breach of that duty, (3) that the breach of that duty was the proximate cause of the harm to the plaintiff, and (4) damages. Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999); Gylten v. Swalboski, 246 F.3d 1139, 1141 (8th Cir. 2001). "In the absence of a legal duty, the negligence claim fails." Gilbertson, 599 N.W.2d at 130.

A person generally has no duty to act for the protection of another person. Id.; Delgado v. Lohmar, 289 N.W.2d 479, 484 (Minn. 1979). In Minnesota, the existence of a legal duty to act

---

[2] Restatement (Second) of Torts § 323 (1965) states that "[o]ne who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

depends upon two factors: (1) the relationship of the parties, and (2) the foreseeability of the risk involved. Gilbertson, 599 N.W.2d at 130; Erickson v. Curtis Investment Co., et al., 447 N.W.2d 165, 168-169 (Minn. 1989); Gylten, 246 F.3d at 1141. Ultimately the question of duty is one of policy. Erickson, 447 N.W.2d at 169.

In order to find that a special relationship exists sufficient to create a duty to protect others from harm or rescue them, it must be assumed that the potential harm prevented by the defendant is one that the defendant is in a position to protect against, and should be expected to protect against. Gilbertson, 599 N.W.2d at 131; Gylten, 246 F.3d at 1142. Typically, this situation arises where the plaintiff entrusts his or her safety to defendant, and defendant in turn accepts that entrustment. Erickson, 447 N.W.2d at 168. Based on the record, at no time did Gavin entrust his safety to Hess, and, correspondingly, Hess never accepted such an entrustment. The harm of Conroy's boat approaching and hitting Gavin was a harm that Hess was not in a position to protect against, and likewise should not be expected to protect against.

There are four general circumstances under which courts have determined a special relationship, and therefore a duty, exists. M.H. v. Barber, No. C6-99-16, 1999 WL 343806, at *4 (Minn. Ct. App. June 1, 1999). First, a relationship has been found where the plaintiff is particularly vulnerable and dependent on the defendant and the defendant holds considerable power over the plaintiff's welfare. Id. Second, a duty may arise where defendant accepts a responsibility to protect another, though there be no initial duty. Id. Third, where the harm to be prevented is one that defendant can, and should be expected to, protect against. Id. Lastly, the court considers whether or not a duty should arise as a matter of policy. Id. Conroy argues that Hess falls under the second category, having created a special relationship when he accepted a responsibility to protect Gavin

by towing the jet ski to shore.

Minnesota courts have found a special relationship sufficient to require the imposition of a duty to protect in a very limited number of situations. A special relationship has been held to exist in cases involving the hospital-patient relationship, the landlord-tenant relationship, and the merchant-customer relationship.[3] Sulik v. Total Petroleum, Inc., 847 F.Supp. 747, 750 (D. Minn. 1994) (internal citations omitted). Such special relationships also exist between parents and children, masters and servants, possessors of land and licensees, common carriers and their customers, or people who have custody of a person with dangerous propensities. Delgado, 289 N.W.2d at 483-484. None of the above relationships encompass Hess' relationship with Gavin, or with Conroy. Minnesota courts have declined to impose the duty to protect where the defendant is not in a position to protect the entrusting party. See Sulik, 847 F.Supp. at 751. The record establishes Hess had no duty to protect Gavin from Conroy's oncoming boat. Conroy argues that Hess should have known Gavin might get hurt while he was swimming to shore. However, "[t]he fact that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Delgado, 289 N.W.2d at 483.

Hess did not undertake to save Gavin from any harm. When Hess left Gavin in the water to tow the jet ski to shore, Gavin faced no harm and did not need or request a rescue. Gavin and Michael were both wearing bright colored life jackets, and were competent swimmers. Gavin asked

---

[3] Special relationships can also give rise to a duty to warn, but have only been found on the part of common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. Harper v. Herman, 499 N.W.2d 472, 474 (Minn. 1993). None of these instances apply to the facts of this case.

Hess to tow the jet ski to the dock, and told Hess that he would swim to shore. Gavin was not "particularly vulnerable," nor was he in a position such that he lacked opportunities for self-protection. Hess was not in any position to control whether Gavin swam with his life jacket on or off, or whether he swam with his head up or down. Hess also had no power to control Conroy's boat, or the manner in which Conroy was driving. There are many dangers, such as those of fire and water, which "may reasonably be expected to be fully understood and appreciated by any child." Harper, 499 N.W.2d at 475 (holding that boat owner had no duty to warn a guest the water surrounding the boat was too shallow for diving). Hess simply did not have a special relationship with either Gavin or Conroy sufficient to create a duty.[4] Both parties concede that had Hess refused to tow the jet ski to shore there would be no arguable basis for a duty of care owed by Hess to Gavin. As a matter of public policy, to punish Hess for agreeing to help Gavin by towing the jet ski to shore would be unjust. Hess' Motion for Summary Judgment is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Hess' Motion for Summary Judgment [Doc. No. 13] is **GRANTED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: January 25, 2002

[4] Even where a duty to protect exists, the duty only extends to foreseeable acts. Spitzak v. Hylands, Ltd., 500 N.W.2d 154, 158 (Minn. 1993). The court need not reach the issue of foreseeability in this case, as no duty was owed to Gavin or Conroy by Hess.